**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DIANE DUNCAN BROOKS,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:17-cv-01506-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Diane Duncan Brooks ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DBI") under Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 6, 7.)

1

and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for supplemental security income on December 2, 2013. AR 157-58.[2] Plaintiff alleged that she became disabled on January 24, 2006, due to basal joint replacement side effect and reflex sympathetic dystrophy. AR 168, 173. Plaintiff's application was denied initially and on reconsideration. AR 87-91, 95-99. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). ALJ John Heyer held a hearing on June 8, 2016, and issued an order denying benefits on June 28, 2016. AR 16-24, 30-54. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 2-6. This appeal followed.

### **Hearing Testimony**

The ALJ held a hearing on June 8, 2016, in San Francisco, California. Plaintiff appeared by video from Bakersfield, California, with her attorney. Impartial Vocational Expert ("VE") Nancy A. Rynd also appeared. AR 19, 32.

In response to questioning by the ALJ, Plaintiff testified that she has a driver's license and drives occasionally. She last worked two weeks prior to the hearing, filing papers into existing files for a real estate agent. She works six hours per week every other week. AR 34-35.

When asked about her work history for the last fifteen years, Plaintiff testified that she worked for about 4 months in 2011 for Hallmark putting cards in order in a store. She only worked 20 hours per week but had to quit because her hand limited her too much. She also had a short stint working for the Census Bureau. Prior to 2006, Plaintiff worked for 32 years as a courtroom clerk for a judge in Bakersfield Superior Court. She was unable to perform her duties, so she was given a disability retirement in March 2007. AR 35-37.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

When asked why she felt she was disabled, Plaintiff testified that she is unable to write, has limited use of her right hand, and can no longer do computer work. She also has quite a bit of pain. AR 37.

When asked about her abilities, Plaintiff testified that she could lift five pounds total with both hands. She can lift a gallon of milk with her left hand, but not her right. She can lift about two pounds with her right hand and three to four pounds with her left. On a typical day, she will wake up in the morning, brush her teeth, read the newspaper, make coffee, and read books. Her grandchildren, ages seven to nine years old, will come over quite often and she will play with them. She also likes to cook on a limited basis, watches TV and does some limited herb gardening in small pots. AR 37-39.

When asked about surgeries, Plaintiff testified that she had her knee replaced in December 2015 and eye surgery in 2015. About three years prior, she had her toe amputated. AR 39.

When asked about her hand, Plaintiff testified that she has reflex sympathetic dystrophy and has had a couple of surgeries, with the last one in 2007 or 2008. All five of her fingers were atrophied and closed, but with surgery they were "able to get two of the - - a third open, two-thirds open, but the remainder of [her] hand is –the fingers are closed" and in a stuck position. AR 39-40. Plaintiff reported that her hand condition has been permanent and stationary for a long time and there is no other diagnosis to correct it. In addition to her hand, Plaintiff testified that her left shoulder and left hand have been giving her trouble. She has a torn rotator cuff in her left shoulder, but she is trying to live with it. AR 40.

In response to questions from her attorney, Plaintiff testified that she cannot do jobs where it involves her hand to write because she cannot hold a pen longer than writing a check. It hurts all the way to her elbow to write. She was told that the nerves "flayed themselves out of their area and they won't go back," which "causes these things to be stuck." AR 41-42. When she is filing, she just uses two fingers to put the papers in the file. AR 42. She also reported that about once a week she either drops something or breaks something, and she no longer has the strength for lifting. When driving, she must be careful because her fingers get stuck on the wheel and she accidentally turns it. AR 42-43.

When asked about her left thumb, Plaintiff testified that her left hand gets more tired. She is trying to do more with her left hand, but her left thumb has become an issue. AR 44.

When asked about playing with her grandchildren, Plaintiff reported playing board games with them, like Monopoly and Sorry. She does not play catch with them but will watch them play soccer. They are self-sufficient. AR 44-45.

When asked about her evaluation by Dr. Choi in 2007, Plaintiff confirmed that her job would require use of her right hand 34-66% of the time. At that evaluation, Dr. Choi made her permanently incapacitated from performing her work as a courtroom clerk. AR 45-46. She never tried to work wearing splints. AR 46-47.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Nancy Rynd. As an initial matter, the ALJ asked the VE if an individual limited to sedentary level work with only occasional use of the upper extremity would be able to perform Plaintiff's past work. The VE testified that such an individual would not and that Plaintiff's work as a courtroom clerk would require more than occasional use of the upper extremities. The VE also testified that there are some positions at sedentary that do not require frequent use of the upper extremities, but the majority of sedentary positions require frequent use of the hands. AR 49.

The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to consider an individual that can lift 10 pounds, sit for six hours in an eight-hour day, stand and walk for two hours in an eight-hour day, can use the right dominant hand occasionally to do simple grasping and fine manipulations and can use the left nondominant hand and arm for frequent work activities. The VE testified that an individual with those characteristics would not be able to perform Plaintiff's past work. The VE described Plaintiff's past work as a court clerk, along with part-time work as a file clerk and employment as a census enumerator. The VE further testified that the Dictionary of Occupational Titles ("DOT") says that the employment as a court clerk requires occasional reaching, handling, and fingering. The VE confirmed that the hypothetical person would be able to do the court clerk job as per the description in the DOT. AR 49-50.

For the second hypothetical, Plaintiff's attorney asked the VE to consider the restrictions in hypothetical one but change the use of the right hand to less than occasional. The VE testified that

4

such a person could not perform Plaintiff's past relevant work. However, the VE testified that this person could perform the work of surveillance system monitor, which the DOT describes "as not having any handling, fingering, reaching." AR 51. The position is sedentary work with approximately 4,000 jobs nationally and 700 in the State of California. The VE provided a description of the surveillance system monitor work and posited that there were only 4,000 positions listed because, although the number of security positions have grown substantially over the last few years, in her experience the position frequently requires more than the description in the DOT. AR 51-53.

**Medical Record**

The relevant medical record was reviewed by the Court, and it will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 19-24. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity during the period from her alleged onset date of January 24, 2006, through her date last insured of September 30, 2014. AR 21. The ALJ identified status post total knee replacement, shoulder impingement syndrome, osteoarthritis of the bilateral knees, and Dupuytren's contracture, status post-surgery, as severe impairments. AR 21. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 21.

Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except she can occasionally use her dominant hand to reach, finger and handle and can use her nondominant hand frequently to perform the same activities. AR 22-23. With this RFC, the ALJ found that Plaintiff could perform her past relevant work as a court clerk. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 24.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this

Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

Plaintiff argues that the ALJ erred in formulating her RFC by assigning little weight to the opinions of the providers that treated her during her workers' compensation and/or disability retirement claim. Plaintiff does not challenge the ALJ's RFC determination with respect to Plaintiff's walking, sitting, carrying or lifting limitations. Instead, the issue is limited to Plaintiff's ability to use her right upper extremity, including her hand and fingers. (Doc. No. 15 at 3.)

Plaintiff also argues that the ALJ erred by failing to consider the dexterity required to perform her past relevant work at step-four of the sequential evaluation.

## **DISCUSSION**[3]

### A. Evaluation of the Medical Opinion Evidence

Plaintiff argues that the ALJ erred in his development of Plaintiff's RFC by assigning little weight to the opinions of Dr. Gregory J. Hanker, Dr. David T. Bowen, Dr. Mark Montgomery and Dr. Portia Choi, all of whom evaluated Plaintiff in the course of her workers' compensation or disability retirement claim.

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

6

A claimant's RFC is the most she can still do despite her limitations. *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996) (citing 20 C.F.R. § 404.1545(a)). In determining a claimant's RFC, the ALJ must consider all relevant evidence of record, including medical opinion evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more weight should be given to the opinion of a treating source than to the opinions of doctors who do not treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate" reasons supported by substantial evidence in the record to reject this opinion. *Id.* "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

<u>Dr. Gregory Hanker</u>

In connection with her workers' compensation claim, Dr. Hanker evaluated Plaintiff on May 31, 2006. AR 299-303. On physical examination of her dominant right upper extremity, Dr. Hanker found that Plaintiff had significantly diminished flexibility in the wrist and virtually frozen digits of her hand. She had extreme stiffness in her ring and little fingers involving all the interphalangeal joints, and moderate stiffness in her index and middle fingers. AR 302. Dr. Hanker opined that Plaintiff could return to modified work "basically performing left-handed work only." AR 303. When Dr. Hanker advised Plaintiff of this, Plaintiff became very upset and stated she did not want to return to work and did not understand why she would need to return to work when her right hand still hurt. AR 303.

///

///

### Dr. David Bowen

On August 21, 2006, Dr. Bowen, Plaintiff's treating physician, completed a report for the Kern County Employees' Retirement Association. AR 308-10. Dr. Bowen opined that Plaintiff could not return to her position as courtroom clerk and she was permanently incapacitated from the performance of her duties. AR 308. He further opined that Plaintiff occasionally could reach above shoulder level, push/pull and lift/carry up to 10 pounds, but she could not use her right hand for repetitive movements, such as simple grasping, firm grasping or fine manipulation. AR 309-10.

### Dr. Mark Montgomery

On November 28, 2006, Dr. Montgomery, also a treating physician, provided a consultation report in connection with Plaintiff's workers' compensation claim. During examination, Plaintiff demonstrated only reduced grip strength in her right hand and reduced range of motion in her right ring and small finger. AR 410-411. Dr. Montgomery identified significant flexion contractures of her right ring and small fingers. AR 412. Following release of her contractures by Dr. Montgomery, he completed an additional report on December 13, 2007. On examination, Plaintiff continued to have reduced grip strength in her right hand and reduced range of motion in her right ring and small finger. AR 425-26. Dr. Montgomery opined that Plaintiff required prophylactic work restrictions consisting of minimal use of the right hand. AR 427.

### Dr. Portia Choi

On September 5, 2007, Dr. Choi provided a summary of Plaintiff's case in connection with her county disability retirement. Dr. Choi did not examine Plaintiff and instead reiterated the position of Plaintiff's physicians that she "would never improve to the degree that she could return to her regular job duties due to restriction in the use of her right hand." AR 351. Dr. Choi opined, as reviewer, that Plaintiff was "permanently incapacitated to perform her work duties of a Courtroom Clerk II due to injury to her right hand on a Service-Connected basis." AR 351.

In assessing Plaintiff's RFC, the ALJ assigned little weight to these opinions, reasoning as follows:

> The claimant was injured at work, and because of that, was followed closely in the Workmen's compensation scheme. It is true that eventually doctors concluded that she

was incapable of performing her then current job as she performed it. That conclusion, however, is entitled to little weight in this context, where it must also be considered whether the claimant can perform her work as it is generally performed, and whether she can perform any work at all in the national economy. Because of that, very little weight is given to these opinions.

AR 23.

As indicated above, Plaintiff argues that the ALJ erred by assigning little weight to these opinions, which were phrased in the workers' compensation context. An ALJ may not disregard a physician's medical opinion simply because it was initially elicited in workers' compensation proceedings, or because it is couched in the terminology used in such proceedings. *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). Instead, the ALJ must evaluate medical opinions couched in workers' compensation terminology just as he or she would evaluate any other medical opinion. *Id.* The ALJ must "translate" terms of art contained in such medical opinions into the corresponding Social Security terminology in order to accurately assess the implications of those opinions for the Social Security disability determination. *Id.* at 1106. The ALJ's decision "need not contain an explicit 'translation,'" but it should indicate that the ALJ recognized the differences in terminology and took those differences into account in the evaluation. *Id*.

Here, the ALJ recognized the distinction between a disability determination in the Social Security context and the inability to return to work in the workers' compensation scheme. AR 23. However, the ALJ's decision does not indicate that he considered the functional limitations ascribed to Plaintiff by the workers' compensation physicians or that he adequately translated those limitations into corresponding Social Security terminology.

Although the Commissioner argues that these physicians did not "offer[] any functional limitations," this argument is incorrect. (Doc. No. 22 at 7.) Drs. Hanker, Bowen, and Montgomery each identified functional limitations with respect to Plaintiff's right hand. In August 2006, Dr. Hanker indicated that Plaintiff could basically perform "left-handed work only." AR 303. In October 2006, Dr. Bowen opined that Plaintiff could not use her right hand for repetitive movements, such as grasping and find manipulation. AR 309-10. Finally, in the most recent opinion, issued in December 2007, Dr. Montgomery limited Plaintiff to minimal use of her right hand. AR 427. The ALJ did not

9

identify these limitations in his opinion, translate them to limitations in the Social Security context or explain why he rejected them.

Arguably, the ALJ's RFC may have accounted for the repetitive limitations identified by Dr. Bowen by limiting Plaintiff to occasional manipulation with her right hand. *See Freddy E. P. v. Berryhill*, 2019 WL 266963, at *7 (C.D. Cal. Jan. 18, 2019) (noting that "[a]t least one VE has testified that in California workers' compensation jargon, a restriction against 'repetitive' activity equates to the ability to perform the activity occasionally"). Even so, the ALJ's opinion provides no discussion demonstrating that he in fact considered Dr; Bowen's functional limitations or the functional limitations identified by Drs. Hanker and Montgomery, who limited Plaintiff to use of only her left hand or to minimal use of her right hand, respectively. In failing to translate or otherwise provide a sufficient explanation for rejecting the functional limitations of these physicians, particularly her treating physician, Dr. Montgomery, the ALJ erred.[4]

Based on the current record before the Court, however, any such error is harmless. An error is harmless if it is nonprejudicial to the claimant or is "inconsequential" to the ALJ's "ultimate nondisability determination." *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, in response to questioning from Plaintiff's attorney, the VE testified that a hypothetical person who could perform sedentary work with no reaching, handling, fingering or fine manipulation could perform other work in the national economy, such as surveillance system monitor, as set forth in the DOT, with 4,000 jobs nationally and 700 regionally. AR 51-52. Thus, even accounting for an extreme limitation to *no* reaching, handling, fingering or fine manipulation with her right hand as posited by Dr. Hanker, Plaintiff would not be found disabled because she could perform other work in the national economy existing in significant numbers. Accordingly, any insufficiency in the ALJ's RFC or hypothetical was cured by other questioning and hypotheticals posed to the VE. The error is thus harmless. *See Gaston v. Comm'r of Soc. Sec. Admin.*, 577 Fed.App'x 739, 742 (9th Cir. 2014) ("The ALJ's failure to include in the hypothetical a limitation on reaching in all directions was harmless error because the position of surveillance system monitor, identified by the VE as a position

---

[4] The ALJ also did not assign weight to any physician opinion relative to Plaintiff's right-hand limitations.

Gaston could perform, does not require such ability."); *Hernandez v. Colvin*, No. 2:14-CV-2142-CKD, 2015 WL 4730224, at *6 (E.D. Cal. Aug. 10, 2015), aff'd sub nom. *Hernandez v. Berryhill*, 707 Fed.App'x 456 (9th Cir. 2017) ("[A]ny insufficiency in the ALJ's hypothetical was cured by the questioning and hypotheticals posed by plaintiff's attorney. Therefore, any error in this regard would have been harmless."). Given this finding, and testimony that she could perform other work in the national economy, it is unnecessary to reach Plaintiff's remaining argument regarding whether she retained the dexterity to perform her past relevant work.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Diane Duncan Brooks.

IT IS SO ORDERED.

Dated: **March 29, 2019**        /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE